**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **REVEREND ROBERT HENRY** | § | |
| | § | |
| **V.** | § | **A-06-CA-1007 AWA** |
| | § | |
| **CITY OF TAYLOR, et al.** | § | |

## <u>MEMORANDUM ORDER AND OPINION</u>

Before the Court is Defendants' Motion for Summary Judgment (Clerk's Doc. No. 34) filed

October 17, 2007; and Plaintiffs' Response (Clerk's Doc. No. 47) filed April 7, 2008; Defendants'

Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment (Clerk's Doc. No. 51)

filed April 18, 2008; and Plaintiff's Response to Defendants' Reply (Clerk's Doc. No. 53) filed

April 23, 2008.  Having considered the motions, responses, replies, the pleadings, and the entire

casefile, the Court enters the following Memorandum Order and Opinion.

### I.  Background

The following facts are undisputed.  In 2004, City of Taylor Code Enforcement Officer Bob

Luke observed a property located at 404 Bland in Taylor, Texas.  Luke determined that the

dilapidated structures on the property violated the City's Nuisance Code.  Luke checked the

Williamson County online tax records and determined that Robert Henry was the owner of the

property.[1]  He issued a Complaint via certified mail to Plaintiff Robert Henry at 402 Bland, which

was the owner's address listed on the Williamson County online tax records.  The certified mail

was accepted by Plaintiff's brother, Robert Henry, who signed the green card acknowledging

acceptance of the mail.  The Complaint instructed Henry that the condition of the 404 Bland

---

[1] Henry had grown up at 402 Bland in the house next to the 404 lot.  In 1974, Henry bought a home at 208 Edmond Street, where he has lived until the present.

property needed to be corrected by November 14, 2004.  When the property conditions were not corrected, a summons to appear in municipal court on December 2, 2004, was sent to Robert Henry at the 402 Bland address.  Henry did not appear. A warrant was issued for Henry's arrest citing violations of the City's housing ordinance and two failures to appear.

On April 4, 2005, Plaintiff Robert Henry went to the City Annex in Taylor, Texas, to pay his water bill.  While waiting in line, Plaintiff was approached by Officer Chavana, of the Taylor Police Department, who asked him to identify himself, and then to step outside.  Once outside, Officer Chavana informed Plaintiff he was under arrest for violation of the City Nuisance Code. Henry was arrested, processed and brought before a municipal judge.  He was then released.  Henry later presented a deed showing he had sold 404 Bland in 2000.  On April 28, 2005, Judge Delores Chavana dismissed all charges against Henry.

Henry originally sued in state court complaining of his wrongful arrest.  He eventually amended his Complaint to state a claim for wrongful arrest pursuant to 42 U.S.C. § 1983.  The case was removed to federal court.

The City of Taylor moves for summary judgment on the claims against it and on behalf of the "John Doe" defendants alleging that Plaintiff cannot make out a constitutional violation as required by § 1983 and has failed to make out a policy or custom causing a violation.  The City also alleges the John Doe defendants are immune from suit and that the claims against them are barred by the applicable statute of limitations.  Defendants also argue that any claim Plaintiff may have for malicious prosecution, a § 1983 claim for selective enforcement, due process lack of notice claim, other state law claims, and declaratory judgment action are all without merit.

Plaintiff Henry responds that his constitutional right to be free from wrongful arrest was violated when he was arrested under a warrant that falsely identified him as the owner of the property at 404 Bland.  Henry argues that information was available to the City, the housing code enforcement official, and the arresting officer showing he was not the owner of the property.  Henry asserts that his address was listed in the local telephone book, in other City records, in title documents, and that various City employees were aware of his address.

Plaintiff asserts that the City of Taylor's code enforcement policies caused Henry to be falsely arrested.  Plaintiff also asserts that the John Doe Defendants are not entitled to qualified immunity because the arresting officer did not have a reasonable good faith belief that he was arresting the proper person, e.g., he lacked probable cause.  He also argues that Bob Luke, who swore the affidavit supporting the arrest warrant did so either falsely or recklessly, thereby supporting his Fourth Amendment claim.  Plaintiff also claims that notice of the hearing was not reasonable.

## II. Summary Judgment Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, demonstrate that no genuine issue as to any material fact exists and that judgment is warranted in favor of the moving party as a matter of law. Fed. R. Civ. P. 56(c).  A federal court views the evidence in the light most favorable to the non-movant. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).  If both parties file motions for summary judgment, the Court views each motion independently. *Taylor v. Gregg*, 36 F.3d 453, 455 (5th Cir.1994).

3

Once the moving party satisfies his or her burden of demonstrating that no genuine issue of material fact exists, the non-movant must show that evidence in the record indicates that factual issues would be resolved in his or her favor, indicating that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the evidence suggests that a reasonable jury could return a verdict for the non-moving party, then a genuine issue of material fact exists. *Id.* at 248. The non- movant's conclusory allegations or bare assertions unsupported by facts are insufficient to defeat a motion for summary judgment. *Id.* at 247-48. The non-movant must establish the existence of the elements essential to his or her case and as to which he or she bears the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Otherwise, summary judgment in the movant's favor is proper. *Id.*

### III.  Motions for Summary Judgment

#### A.    Claims Against the John and Jane Doe Defendants

The City of Taylor moves for summary judgment on all claims Plaintiff has brought against the Jane Doe and John Doe Defendants asserting that they are barred by the applicable statute of limitations. The Court agrees.

Plaintiff was arrested on April 4, 2005. His case was removed to federal court on December 20, 2006. On June 13, 2007, Plaintiff filed an Amended Complaint which he entitled "Plaintiff's Original Complaint." In that Complaint he named "John Doe" and "Jane Doe" as Defendants. To date, despite ongoing discovery, and a limited number of individuals involved in the events of which he complains, Plaintiff has failed to identify and serve these defendants. He has also failed to seek leave to amend his Complaint to identify these defendants.

4

The limitations period for a § 1983 action is determined by the state's personal injury limitations period, *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998), which in Texas is two years, Tex. Civ. Prac. & Rem.Code Ann. § 16.003.  The wrongful arrest of which Plaintiff complains occurred in April 2005 and Plaintiff has yet to name the John Doe and/or Jane Doe defendants.  The claims against the Doe defendants are thus time-barred.  Plaintiff cannot even argue that he should be allowed to substitute the properly named defendants under the theory that a new complaint might "relate back" to the original filing of the complaint per Federal Rule of Civil Procedure 15(c).  The Fifth Circuit has held that an amendment to substitute a named party for a John Doe does not relate back under rule 15(c).  *Jacobsen*, 133 F.3d at 320-21 (reasoning that rule 15(c) requires a "mistake concerning the identity of the proper party" and that use of a John Doe moniker does not constitute a "mistake").  Accordingly, summary judgment on all Plaintiff's claims against the Doe defendants is proper because those claims are time-barred, as any claims against parties named in their place would also be barred by limitations.

### B.    Claims Against the City of Taylor

In its Motion for Summary Judgment, the City of Taylor asserts that Plaintiff cannot make out a Fourth Amendment wrongful arrest claim pursuant to Section 1983.  The City argues that: 1) Plaintiff cannot show that a constitutional right was violated by a City employee; and 2) Plaintiff cannot establish that a City policy or custom caused Plaintiff's alleged injuries.

In his Response, Plaintiff alleges that he has identified the right to be free from wrongful arrest as a clearly established constitutional right.  Plaintiff also asserts that the City's customs caused his arrest.  Plaintiff's argument is somewhat muddled, but it seems he is claiming that the City's

method of locating property owners led to his wrongful arrest because the City should have known where he really lived.

Under long-standing caselaw from the Supreme Court and the Fifth Circuit, municipal liability under § 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Monell v. Dep't. of Social Services*, 436 U.S. 658, 694 (1978); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). In order to carry this heavy burden, "the plaintiff must generally demonstrate at least a pattern of similar violations." *Id.* To prevail on a claim for municipal liability under § 1983, a plaintiff must also establish that the municipal policy or custom identified was executed with deliberate indifference to the plaintiff's clearly established constitutional rights. *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

### 1.    No Fourth Amendment Violation

Plaintiff claims that he was wrongfully arrested in violation of the Fourth Amendment. In this case, Plaintiff was arrested pursuant to a warrant. "Where an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest. Such an arrest is not unconstitutional, and a complaint based on such an arrest is subject to dismissal for failure to state a claim." *Thomas v. Sams*, 734 F.2d 185, 191 (5th Cir.1984) (citing *Rodriguez v. Ritchey*, 556 F.2d 1185, 1191 (5th Cir. 1977) (en banc)). Under the law of the Fifth Circuit, "[i]t is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate . . . the [magistrate's] decision breaks the chain of causation for false arrest, insulating the [officer who initiated the arrest]." *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994). This is true even if the officer acts with malice in procuring the warrant, as long as the officer's acts do not taint the

deliberations of the magistrate. *See Taylor*, 36 F.3d at 457; *Hand v. Gary*, 838 F.2d 1420, 1427-28 (5th Cir. 1988).  The chain of causation is broken, however, only where the officer presents all the facts to and does not maliciously withhold any relevant information from the magistrate. *See id.*

### a.   Failure to Appear Warrant Valid

In this case, the City of Taylor asserts that Plaintiff failed to allege a violation of the constitutional right to be free from unreasonable seizures because he was arrested pursuant to a facially valid arrest warrant.  Plaintiff was arrested pursuant to a warrant made for the offense of failing to appear at a municipal court hearing and for violating various City ordinances.[2]

First, the failure to appear in court is a unique offense for purposes of issuing a warrant. By its very nature, a defendant's failure to appear is typically within the court's personal knowledge. *Atkins v. State*, 984 S.W.2d 780, 783 (Tex. App. –  Houston [1st Dist.] 1999, no pet.). Whether the defendant appears or fails to appear is an easily ascertainable, objective event – either the party is in court or he is not in court. *Atkins*, 984 S.W.2d at 783.  The trial court issuing the warrant for failure to appear was therefore supplied with sufficient information to support an independent judgment that probable cause existed for the warrant.  In this case it is undisputed that Plaintiff failed to appear after issuance of a court summons.  Therefore, the fact that Plaintiff had an outstanding warrant for failing to appear gave the officers adequate probable cause to arrest him.

---

[2] To some extent, Plaintiff seems to be arguing that he was entrapped into the failure to appear for which the warrant was issued (he does not deny that he failed to appear thus he cannot successfully question the validity of the warrant on this basis), when the summons was sent to an incorrect address.  However, the Fifth Circuit has held that entrapment is not a constitutional violation and cannot serve as the basis for a § 1983 violation. *Stokes v. Gann*, 98 F.3d 483 (5th Cir. 2007).

*See Welcome v. State*, 865 S.W.2d 128, 134 (Tex. App.– Dallas 1993, pet. ref'd); *Dempsey v. State*, 857 S.W.2d 759, 761 (Tex.App.-Houston [14th Dist.] 1993, no pet.).  Because there was probable cause for the arrest for the failure to appear, Plaintiff has failed to allege any violation of his constitutional rights by the officers involved in the arrest or by the City of Taylor.  *Romero v. City of Richardson*, 166 F.3d 339 (5th Cir. 1998).  This claim fails.

### b.    Warrant for Violation of City Ordinances Valid

Second, to the extent Plaintiff argues that the warrant for violating City ordinances was not supported by probable cause, the Court finds that this claim fails.  Plaintiff argues that Luke included false information in the affidavit when he misidentified Plaintiff's true address and improperly identified Plaintiff as the owner of the offending property, thus tainting the magistrate's finding of probable cause to issue a warrant on that basis.  Plaintiff argues that Officer Luke engaged in malicious or reckless conduct in making his affidavit, because he was informed by Ray Henry that Plaintiff did not own 404 Bland.  In *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), the Supreme Court held that an accused's Fourth Amendment rights are violated when a police officer deliberately or recklessly includes a material false statement in a warrant application.

However, in a suit attacking the veracity of a probable cause affidavit, once the officer submits evidence of a warrant signed and issued by a judicial officer, the burden then shifts to the plaintiff to make a substantial showing: (1) that the officer "knowingly and intentionally, or with reckless disregard for the truth, included false statements in the affidavit;" and (2) "that the false statements were necessary to the finding of probable cause." *Id.*

Plaintiff has failed to make a showing that Officer Luke acted intentionally or recklessly made false statements in his affidavit.  In fact, he submits as summary judgment evidence the

deposition of Bob Luke who states that "if I'd have had knowledge of the deed at that time, I would have sent it to Cheryl – to the Johnsons, but the tax rolls said the mailing address for those people is there [referring to the 402 Bland address] . . . ." *See* Luke Deposition at p. 76.  He also testified that he sent the initial notice to the 402 Bland address because that was the address listed on the tax rolls, and he believed that Robert Henry was at least a part owner of the property based upon that information.  *Id.* at 78.  Additionally, Ray Henry accepted and signed for the certified mail directed to the 402 Bland address, so Officer Luke and the City of Taylor had no way of knowing that he had identified the wrong owner of the property.

Although the evidence shows that Plaintiff sold the property in question to his niece and nephew Alfred Johnson and Cheryl Brown for $10.00 in October of 2000, there is no evidence that Officer Luke had actual knowledge that they solely owned the property.  Even the cash warranty deed, which Luke did not view and upon which Plaintiff relies, lists the grantees' mailing address as 402 Bland – Ray Henry's address – the address where the notices and summons were sent.  The evidence shows that at a minimum Officer Luke sent the notice to the wrong person at the proper address.  Plaintiff has failed to show how Officer Luke might have identified the proper address of owners Brown and Johnson.  He simply asserts that Luke should have known that Robert Henry lived elsewhere.

Plaintiff relies upon a claim that his brother Ray Henry, informed Officer Luke that the property did not belong to Robert Henry prior to Henry's arrest, as evidence that Officer Luke knowingly presented false information to the Court.  *See* Affidavit of Ray Henry.  However, this Court finds that Officer Luke was not required to rely on the claims of family members in ascertaining the ownership of the property.  The on-line record viewed by Officer Luke did identify

9

Robert Henry as an owner of 404 Bland and gave the address of the property as 402 Bland.  At most Luke was negligent in not double-checking Plaintiff's address.  However, the Fifth Circuit has held that negligent conduct leading up to the issuance of a warrant or grand jury indictment is not actionable.  *See Campbell v. San Antonio*, 43 F.3d 973 (5th Cir. 1995) (plaintiff's arrest resulting from negligent identification procedures versus intentional misidentification was not actionable; *Herrera v. Millsap*, 862 F.2d 1157 (5th Cir. 1989) (plaintiff's arrest resulting from police negligence in misspelling suspect's name on materials submitted for indictment and warrant was not actionable).

Nothing in the record in this case casts any doubt on Luke's veracity.  Plaintiff has failed to show that Luke actually knew that any of the statements included in the affidavit were false, he simply claims that Luke should have known they were.  Plaintiff fails to satisfy his burden of making a "substantial showing" that Luke knowingly, intentionally, or recklessly included false statements in the affidavit. *See Franks*, 438 U.S. at 155-56.  Therefore, Plaintiff has failed to meet his burden, and the City of Taylor is entitled to summary judgment on Plaintiff's claims to the extent they challenge the affidavit.

### C.     Warrant Supported by Probable Cause

Additionally, the Court finds that the warrant for violating the City ordinances was based upon probable cause.  Police officer seeking the issuance of a warrant must present an affidavit containing facts sufficient to "provide the magistrate with a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 239 (1983).  Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge . . . are sufficient for a reasonable person to conclude that the suspect had committed or was committing

an offense." *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001).  The reasonable person

standard depends on the expertise and experience of law enforcement officials. *United States v.

Garcia*, 179 F.3d 265, 268 (5th Cir. 1999).  Finally, probable cause does not need to rise to the

level sufficient to support a conviction, although it must be more than a "bare suspicion." *Id.* at

269.  Rather, probable cause has been held to mean a "fair probability" that a crime has been

committed. *Id.*  That fair probability, in turn, need not reach the fifty percent mark. *Id.*

In support of the original court summons, City of Taylor Code Enforcement Officer Bob

Luke submitted a probable cause affidavit to the Court stating that Robert Henry was the owner of

the structure located at 404 Bland and that it was dilapidated in violation of City ordinances.  *See*

Defendants' Exhibit 1-A.  In his affidavit, Mr. Luke states that prior to this, he examined the

property, and he examined the Williamson County online tax records which named Robert Henry

as owner of the property and listed his address as 402 Bland.  *See* Defendants' Exhibit 1-A.

Subsequently, Luke, sent two certified letters to that address notifying Henry that the property

needed to be brought up to code.  *See* Defendants' Exhibit 1-B.  The letters were signed for by Mr.

Henry's brother Ray Henry, who resided at 402 Bland. *Id.*  Subsequently, Luke determined the

property had not been brought up to City Housing Code requirements and a summons to appear in

Court was issued to Mr. Henry at the 402 Bland address.

Applying the reasonable officer standard, Officer Luke had a reasonable belief that Plaintiff

owned property that was in violation of various City of Taylor housing ordinances.  The totality of

circumstances to his knowledge were 402 Bland was in violation of City ordinances and that

Williamson County online tax records listed Robert Henry as an owner with an address of 402

Bland.  The Court finds that a reasonable officer would find this sufficient probable cause to

request a warrant for the housing violations.  Thus the Court finds that the warrant is supported by probable cause.

### 2. *Monell* Analysis

In the Fifth Circuit, in accordance with *Monell*, municipal liability under § 1983 requires proof of three elements: (1) an official policy or custom, of which (2) a final policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom.  *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

### a. Policy or Custom

Municipalities are liable for illegal arrest claims under § 1983 only if the individual officer or officers who committed the violation acted according to a municipal policy or custom.  *Bryan County,* 520 U.S. at 403; *Monell,* 436 U.S. at 690-91.  The official policy or custom requirement reflects Congress' judgment that municipalities should only be held liable under § 1983 for their own constitutional torts.  *Bryan County,* 520 U.S. at 403.  Official policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations.  *Piotrowski*, 237 F .3d at 579.

"An 'official policy' is either a policy statement, ordinance, regulation, etc. that has been officially adopted by a policymaker, or a persistent, widespread practice of officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Cox v. City of Dallas, Texas*, 430 F.3d 734, 748 (5th Cir. 2005).  "The policymaker must have either actual or constructive knowledge of the alleged

policy." *Id.* "Actual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir.1984) (en banc).  Plaintiffs, however, may not show a policy through mere proof of isolated or random incidents. *See Piotrowski*, 237 F.3d at 578.

Plaintiff identifies the City's procedure in identifying the owners of properties in violation of the City Housing Code as the custom leading to his wrongful arrest.  The City procedure Plaintiff identifies is as follows: 1) the City's housing enforcement code officer checks the property records to find the owner; 2) the housing code enforcement officer sends out a notice of a violation of a housing code ordinance to that address; 3) if nobody appears, the housing code enforcement officers files a complaint against the owner with the municipal court; and 4) the municipal court then determines property ownership through a title search.  Plaintiff asserts that this policy led to his arrest as the original notice was sent out to the wrong person at the wrong address and Plaintiff was never notified of a violation of an ordinance before being arrested for failing to appear.

### b.   Policymaker

Proof of the existence of a policy or custom is insufficient to sustain § 1983 liability without actual or constructive knowledge of that policy on the part of a policymaker.  Showing constructive knowledge of a municipal custom requires "evidence that the incidents were the 'subject of prolonged public discussion or of a high degree of publicity.' " *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)).  In this case, Plaintiff has failed to identify a policymaker who was aware of Luke's method of identifying property owners.  Thus Plaintiff has failed to meet this burden under *Monell*.

c.      **Moving Force**

A governmental entity does not incur liability under § 1983 unless there exists "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton,* 489 U.S. at 385; *see Piotrowski*, 237 F.3d at 580.  In this case, Plaintiff alleges that he was wrongfully arrested because the City's method of identifying property owners caused him to be mistakenly identified as the owner of the 404 Bland property and he did not receive notice of the hearing at which he failed to appear.

The facts of this case do not support Plaintiff's contentions.  The City of Taylor's Code Enforcement Officer Bob Luke attempted to identify the owner of the property by viewing the tax rolls.  Those tax rolls identified the owners as "Johnson, Alfred & Cheryl c/o Robert J. Henry 402 Bland St.; Taylor, TX 76574." *See* Defendant's Exhibit 1-A.  Luke then sent a certified letter to that address that was signed for by Robert Henry's brother, Ray Henry.  In his Affidavit submitted to the Court, Ray Henry stated that, "I did not inform Robert Henry about any legal mail he might have received at 402 Bland Street regarding 404 Bland.  I did not open any mail addressed to my brother.  We receive mail from time to time at our address from the City so it was simply signed for like other certified mail that comes in." *See* Affidavit of Ray Henry at ¶ 2.

Apparently, after signing for his brother's certified mail, Ray Henry failed to inform his brother about the mail.  He states in his affidavit "I told my nephew about the alleged problem that the City had relayed to me regarding his property on Bland Street and he started to correct the problem before they filed the complaint against my brother in November of 2004." *Id.* at ¶ 3.  Robert Henry's court summons was also sent to his brother's address at 402 Bland.  Robert Henry denies that he received proper notice of the summons.

14

A plaintiff must meet a high threshold of proof by showing that the alleged custom or policy was the "moving force" behind the constitutional injury. To show moving force, Plaintiffs are required to "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992) ("a direct causal connection must exist between the policy and the alleged constitutional deprivation"). Moving force is not "a mere but for coupling between cause and effect." *Id.*, 957 F.2d at 1281 (citing *City of Canton*, 489 U.S. at 388-89). Merely showing that correcting the allegedly deficient policy would have prevented the claimed constitutional injury is therefore not sufficient to meet a plaintiff's burden. *See Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 386 (5th Cir. 2005). Rather, the "municipal policy must be affirmatively linked to the constitutional violation." *Fraire*, 957 F.2d at 1281(citing *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)); *Burge v. St. Tammany Parish*, 336 F.3d 363, 371 (5th Cir. 2003) (noting that evidence of an isolated occurrence will not support municipal liability predicated on a widespread custom theory.)

The Court finds that Plaintiff has failed to meet his burden to show a causal connection between the municipal policy and his arrest. In this case, the City's method of determining property ownership failed because the online tax records were incorrect. It was additionally complicated by the unique circumstances of the property – a family member selling to other family members and listing his brother's address as the property owner's address, then the recipient not notifying his brother that he had received mail addressed to the brother. Plaintiff has pointed to no other instances where the method of locating property owners used by Officer Luke in this case resulted in an individual not receiving notice of a court hearing and then being wrongfully arrested for

failure to appear.  It seems doubtful that in most cases, if an improper address was identified, the certified mail would not only be accepted but also signed for by an individual by the same name, thus depriving the City of notification that it had identified the wrong person.  In this case, not only did Mr. Henry's brother sign for his certified mail, he then neglected to inform Mr. Henry that he had received the mail, including the court summons.  The cause of this isolated occurrence is not the City's method of identifying property owners; but rather Mr. Ray Henry's failure to pass along mail to his brother after signing for it.  Plaintiff has failed to show that any City policy was the moving force behind his arrest.

### d.      Deliberate Indifference

Lastly, a "plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Bryan County*, 520 U.S. at 410.  Plaintiffs seeking to recover against a governmental entity under § 1983 "must first prove a direct causal link between the municipal policy and the constitutional deprivation; they then must establish that the [entity] consciously enacted a policy reflecting 'deliberate indifference' to the constitutional rights of its citizens." *City of Canton*, 489 U.S. at 389. "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan County*, 520 U.S. at 410.

Plaintiff Henry asserts that the City's method of pursuing property owners whose properties are in violation of City codes contains the risk that the wrong person will be arrested.  Specifically, Plaintiff points to the City's custom of filing a municipal court complaint without first performing a title search, in an instance such as this where no one responds to the notices the City has sent to

the owner.  However, the Court finds Plaintiff has presented no evidence that the City consciously enacted a policy with deliberate indifference to the effect it would have on its citizens.  Plaintiff's case is an isolated instance where he did not receive his first certified mail notices because his brother failed to forward them to him.  If he had received the notices, he would have had the opportunity to clear up the mistake and no court summons would have been sent.  In most cases the wrong individual with the same last name would not sign for the notice when it is delivered by certified mail, and then fail to forward it on to the proper recipient.  The risk of arrest in this case was created by listing an incorrect address for the owner of the property, and by Rev. Henry's brother not giving mail that he had signed for to Rev. Henry.  Accordingly, the City of Taylor prevails on this additional basis.

### C.      Additional Un-Addressed Claims

In his Original Complaint, Plaintiff asserted violations of his due process rights, malicious prosecution, and discriminatory enforcement of City of Taylor nuisance codes.  Plaintiff also makes various state law claims including a declaratory judgment action.  Defendants move for summary judgment on all of Plaintiff's claims.   In his Response to Defendants' Motion for Summary Judgment, Plaintiff states "in the present case, Rev. Henry submits that the City violated his Fourth Amendment rights when it arrested him under a warrant that falsely identified him as the owner of property in violation of the City's housing code."  Response at p. 9.  Plaintiff does not address Defendants' motion for summary judgment on any additional claims.

The Court recognizes the well-established rule that "[i]f a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived." *See Vaughner v. Pulito*, 804 F.2d 873, 877 n. 2 (5th Cir. 1986); *see also Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678

(1st Cir. 1995) ( "Even an issue raised in the complaint but ignored at summary judgment may be deemed waived.").  In this case, Plaintiff has not asserted a legal reason why summary judgment should not be granted regarding his claimed violations of his due process rights, malicious prosecution, discriminatory enforcement of City of Taylor nuisance codes, as well as his various state law claims including a declaratory judgment action.  Accordingly, the Court grants summary judgment on these claims as well.

### IV. Order Summary

In light of the foregoing Memorandum Opinion IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (Clerk's Doc. No. 34) is GRANTED and that all claims against all Defendants are DISMISSED WITH PREJUDICE.  Lastly, IT IS ORDERED that all pending motions be DENIED AS MOOT.

SIGNED this 19th day of June, 2008.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE